# UNITED STATES DISTRICT COURT
# DISTRICT OF NEW JERSEY

| | |
|---|---|
| YSMAEL ORTEGA SEVERINO,<br><br>　　　　　Petitioner,<br><br>　　v.<br><br>WARDEN, FCI FORT DIX,<br><br>　　　　　Respondent. | Civil Action<br>No. 23-3114 (CPO)<br><br><br>**OPINION** |

**O'HEARN, District Judge.**

Petitioner is a federal prisoner currently incarcerated at Federal Correctional Institution Fort Dix, in Fort Dix, New Jersey. He is proceeding *pro se* with a Petition for Writ of Habeas Corpus pursuant to 28 U.S.C. § 2241. (ECF No. 1.) For the reasons stated in this Opinion, the Court will dismiss the Petition for Petitioner's failure to exhaust his administrative remedies.

## I.   BACKGROUND

This case arises from the Bureau of Prison's ("BOP") calculation of Petitioner's earned time credits ("ETC") under the First Step Act ("FSA"), 28 C.F.R. § 523.40 *et. seq.* Petitioner contends that he has earned an unspecified amount of ETC, towards early transfer to supervised release. (ECF No. 1, at 2, 7.) He alleges that the BOP refused to apply those credits and declared him ineligible to receive them, because of an immigration detainer lodged against him. (ECF No. 1-2, at 1.) In his Answer, Respondent clarified that in addition to the detainer, Petitioner is subject to a final order of removal. (ECF No. 4, at 18; ECF No. 4-2.)

It appears that Petitioner did not challenge his eligibility directly with the BOP, choosing instead to initiate this habeas action. (ECF No. 1, at 2; ECF No. 1-1.) Petitioner filed the instant Petition in June of 2023, (ECF No. 1), Respondent filed an Answer opposing relief, (ECF No. 4), and Petitioner did not file a reply.

## II.     STANDARD OF REVIEW

Courts hold *pro se* pleadings to less stringent standards than more formal pleadings drafted by lawyers. *See Estelle v. Gamble*, 429 U.S. 97, 106 (1976).  Courts must construe *pro se* habeas petitions and any supporting submissions liberally and with a measure of tolerance. *See Royce v. Hahn*, 151 F.3d 116, 118 (3d Cir. 1998).  If a court does not dismiss the petition at the screening stage, the court "must review the answer, any transcripts and records . . . to determine whether" the matter warrants an evidentiary hearing. Rule 8(a) of the Rules Governing Section 2254 Cases in the United States District Courts (made applicable to proceedings under § 2241 by Rule 1(b)). "Whether to order a hearing is within the sound discretion of the trial court," and depends on whether the hearing "would have the potential to advance the petitioner's claim." *Campbell v. Vaughn*, 209 F.3d 280, 287 (3d Cir. 2000); *States v. Friedland*, 879 F. Supp. 420, 434 (D.N.J. 1995) (applying the § 2255 hearing standard to a § 2241 petition), *aff'd*, 83 F.3d 1531 (3d Cir. 1996).

## III.    DISCUSSION

The Court must address the issue of exhaustion as it appears on the face of the Petition that Petitioner has failed to exhaust his administrative remedies.  Although 28 U.S.C. § 2241 contains no statutory exhaustion requirement, a federal prisoner may not ordinarily bring a § 2241 petition, challenging the execution of his sentence, until he has exhausted all available administrative remedies. *E.g.*, *Callwood v. Enos*, 230 F.3d 627, 634 (3d Cir. 2000); *Moscato v. Fed. Bureau of Prisons*, 98 F.3d 757, 760 (3d Cir. 1996).

Courts require exhaustion for three reasons: "(1) allowing the appropriate agency to develop a factual record and apply its expertise facilitates judicial review; (2) permitting agencies to grant the relief requested conserves judicial resources; and (3) providing agencies the

opportunity to correct their own errors fosters administrative autonomy." *Moscato*, 98 F.3d at 761–62; *see also Gambino v. Morris*, 134 F.3d 156, 171 (3d Cir. 1998); *Lyons v. U.S. Marshals*, 840 F.2d 202, 205 (3d Cir. 1988). Nevertheless, exhaustion is not required where it would not promote these goals, such as where exhaustion "would be futile, if the actions of the agency clearly and unambiguously violate statutory or constitutional rights, or if the administrative procedure is clearly shown to be inadequate to prevent irreparable harm" *Lyons*, 840 F.2d at 205; *see also, e.g.*, *Gambino*, 134 F.3d at 171 (finding that exhaustion is not required where petitioner demonstrates futility).

To determine whether a prisoner has exhausted his administrative remedies, courts look to the agency's applicable grievance procedure and rules, in this case, the BOP. *See Jones v. Bock*, 549 U.S. 199, 218 (2007). Pursuant to the BOP's administrative remedy program, an inmate must generally attempt to informally resolve the issue by presenting it to staff through a BP-8 form. *See* 28 C.F.R. § 542.13. If that fails to informally resolve the issue, then the inmate may submit a BP-9 form to the warden. *See* 28 C.F.R. § 542.14. An inmate who is dissatisfied with the warden's response may appeal to the regional director with a BP-10, and an inmate who is dissatisfied with the regional director's decision may appeal to the general counsel in the central office, through a BP-11. *See* 28 C.F.R. § 542.15(a). An appeal to the general counsel is the final level of administrative appeal. *Id.*

With those principles in mind, Petitioner concedes that he has not exhausted his administrative remedies. (ECF No. 1, at 2; ECF No. 1-1.) He argues that he is not required to exhaust because prisoners challenging "the constitutionality of the BOP's regulation excluding prisoners with [immigration] detainers . . . are not required to exhaust administrative remedies." (ECF No. 1-1.)

The Court construes Petitioner as arguing that exhaustion is futile because the "*sole* issue is one of statutory construction or the legality of a BOP regulation." *Furando v. Ortiz*, No. 20-3739, 2020 WL 3264161, at *2 (D.N.J. June 17, 2020) (emphasis added) (citing *Vasquez v. Strada*, 684 F.3d 431, 433–34 (3d Cir. 2012)).  Courts have excused exhaustion in such cases because requiring exhaustion would not promote the goals of administrative exhaustion, *i.e.*, there is no factual record to be developed and the agency cannot directly grant relief or correct its own errors. *Id.*; *Sutton v. Moser*, No. 19-210, 2019 WL 2743959, at *4 (W.D. Pa. July 1, 2019); *see also* e.g., *Wells v. Spaulding*, No. 22-1551, 2022 WL 17228665, at *2 (M.D. Pa. Nov. 23, 2022); *Bradley v. Spaulding*, No. 20-2294, 2021 WL 1964598, at *2 (M.D. Pa. May 17, 2021) (explaining that courts have excused exhaustion in the context of the FSA where the issue solely involved a matter of statutory construction).

The present case, however, does not solely involve issues of statutory or regulatory construction.  Petitioner *assumes* that the BOP declared him ineligible solely because of an immigration detainer against him. (ECF No. 1-2, at 2.)  He does not provide evidence to support that conclusion, or a specific decision from the BOP, as he did not challenge his eligibility with the BOP. (ECF No. 1, at 2.)

Further, Respondent states that the BOP "explicitly removed [from its policies] any references to detainers rendering inmates ineligible to apply . . . credits towards early transfer to supervised release," on February 6, 2023,[1] which was prior to the initiation of this case. (ECF No. 4, at 10–11.)  As a result, if the BOP declared Petitioner ineligible solely for his detainer, that issue no longer renders him ineligible for the credits at issue.  In that regard, Petitioner's challenge

---

[1] Available at: https://www.bop.gov/policy/progstat/5410.01_cn.pdf

4

related to his detainer may be moot.  Based on the record, however, it is presently unclear why the BOP first declared Petitioner ineligible or why he remains ineligible.

Due to that lack of clarity, the Court will dismiss the Petition for failure to exhaust, rather than dismiss this case as moot.  Indeed, Respondent contends that Petitioner is not eligible because he is subject to a final order of removal, and under the FSA, "a prisoner is ineligible to apply time credits . . . . if the prisoner is the subject of a final order of removal under any provision of the immigration laws." (ECF No. 4, at 9, 18–19 (quoting 18 U.S.C. § 3632(d)(4)(E)(i)); *see also* 28 C.F.R. § 523.44(a)(2) (stating that for any inmate "who is. . . [s]ubject to a final order of removal . . . the Bureau may not apply FSA Time Credits toward prerelease custody or early transfer to supervised release").

Respondent also alleges that Petitioner is not eligible because the FSA explicitly excluded certain categories of inmates, including those inmates who are serving a sentence for a conviction under 21 U.S.C. § 841(b)(1), "relating to manufacturing, distributing, dispensing, or possessing with intent to manufacture, distribute, or dispense, a mixture or substance containing a detectable amount of Nphenyl-N-[1-(2-phenylethyl)-4-piperidinyl] propanamide, or any analogue thereof." [2] (ECF No. 4, at 12 (quoting 18 U.S.C. § 3632(d)(4)(D)(lxvi)).  Respondent contends that Petitioner is currently serving a sentence for such a conviction. (ECF No. 4, at 17–18; ECF No. 4-1, at ¶ 3; ECF No. 4-2.)

As Petitioner may be ineligible for reasons other than his detainer, requiring him to challenge his eligibility with the BOP would promote the goals of exhaustion.  First, the fact that it is unclear why Petitioner was ineligible or why he continues to be ineligible, shows the need for him "to attempt to resolve this at the administrative level first" and develop a factual record. *See,*

---

[2] This compound is commonly known as Fentanyl.

*e.g.*, *Chaparro v. Ortiz*, No. 20-5272, 2020 WL 4251479, at *5 (D.N.J. July 24, 2020) (noting the need to develop the factual record when the BOP's efforts are in dispute). "Second, Petitioner could potentially obtain relief from the BOP without using judicial resources," if for example, the BOP continues to declare him ineligible based on the old policy on detainers. *Bortolotti v. Knight*, No. 22-6137, 2022 WL 17959577, at *3 (D.N.J. Dec. 27, 2022), *Furando*, 2020 WL 3264161, at *3; *see Shoup v. Shultz*, No. 09-0585, 2009 WL 1544664, at *5 (D.N.J. June 2, 2009) ("Having no information as to what the decisions of these officials would be, this Court cannot find . . . [that] these decisions would be 'hypothetically illegal,' same as the Court cannot deem the exhaustion process 'futile.'"). Finally, if the BOP has made a mistake in that regard, the BOP should have an opportunity to correct its own errors. *Bortolotti*, 2022 WL 17959577, at *3. Consequently, the Court finds that requiring Petitioner to exhaust his administrative remedies would promote the goals of exhaustion, and that exhaustion is not futile in this case.

## IV. CONCLUSION

For the reasons above, Petitioner has not shown that exhaustion would be futile or that his case otherwise merits excusing the exhaustion requirement. Accordingly, the Court will not excuse his failure to exhaust, and will dismiss the Petition for his failure to exhaust his administrative remedies. This dismissal is without prejudice to the filing of a new petition pursuant to 28 U.S.C. § 2241, under a new docket number, after Petitioner has exhausted his administrative remedies. An appropriate Order follows.

DATED: January 19, 2024

/s/ Christine P. O'Hearn
**Christine P. O'Hearn**
**United States District Judge**

6